UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | | |
|---|---|---|
| DEMETRIUS JONES, | ) | |
| | ) | |
| Petitioner, | ) | 1:09-cv-285/1:07-cr-67-03 |
| | ) | |
| v. | ) | |
| | ) | Judge Curtis L. Collier |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

## **MEMORANDUM**

*Pro se* Petitioner Demetrius Jones filed a motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255 (Court File No. 121) on November 9, 2009. He contends he was deprived of his right to effective assistance of counsel guaranteed by the Sixth Amendment of the United States Constitution. The Government filed a response in opposition to Petitioner's § 2255 motion (Court File No. 137). The motion, together with the files and record in this case, conclusively show Petitioner is entitled to no relief under 28 U.S.C. § 2255. For the following reasons, the Court has determined an evidentiary hearing is unnecessary, *see United States v. Todaro*, 982 F.2d 1025, 1030 (6th Cir. 1993), and Petitioner's § 2255 motion[1] will be **DENIED** for lack of merit (Court File No. 121).

---

[1]In accordance with Rule 4 of the Rules Governing Section 2255 Proceedings, the Court has considered all of the pleadings and filings in Petitioner's § 2255 motion filed herein, and all the files, records, transcripts, and correspondence relating to Jones' conviction in Criminal Docket No. 1:07-cr-67-03, which will be cited by the Court File Number assigned to the particular pleading or motion (e.g., "Court File No. 121, Petition.").

**I.      RELEVANT FACTS AND PROCEDURAL HISTORY**

On May 10, 2007, Petitioner and two co-defendants were charged in a two-count indictment with conspiracy to distribute fifty grams or more of cocaine base, in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(A), and possession with the intent to distribute fifty grams or more of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 18 U.S.C. §§ 2(a) and (b) (Court File No. 1, Indictment). On May 16, 2007, Attorney Leslie Cory was appointed as Petitioner's counsel (Court File No. 6) and Petitioner made his initial appearance before the magistrate judge (Court File No. 8). On August 8, 2007, the Government filed a motion for a mental evaluation (Court File No. 64), which the magistrate judge granted (Court File No. 84). On September 10, 2007, Attorney Bryan Hoss was substituted as counsel for Petitioner (Court File No. 87).

Upon completion of the psychological and psychiatric evaluation, the magistrate judge reviewed the forensic report and found that Petitioner was not suffering from a mental disease or defect rendering him mentally incompetent to the extent he was unable to understand the nature and consequences of the proceedings filed against him or assist his attorney in his defense; that Petitioner was sane at the time of the alleged offenses; and that Petitioner was not lacking in the ability to form the necessary intent required by statute for the charged offenses (Court File No. 105). The Court accepted and adopted the magistrate judge's findings and recommendations and concluded Petitioner was competent to stand trial (Court File No. 107).

A change of plea hearing was held on June 19, 2008 (Court File No. 112). Pursuant to a plea agreement Petitioner had entered into with the Government, Petitioner pleaded guilty to the lesser included offense of Count One of conspiracy to distribute cocaine base, in violation of 21 U.S.C.

2

§§ 846, 841(a)(1), and 841(b)(1)(C) (Court File No. 112). The facts underlying the offense as described in paragraph 4 of the plea agreement are as follows:

> a) On March 15, 2007 the 10th Judicial Drug Task Force opened a case against defendant Shelly Wagner after receiving information from a Confidential Informant (CI) that Shelly Wagner was a large scale distributor of crack cocaine in the Bradley County area. Utilizing the CI, agents made a controlled purchase of two (2) grams of crack cocaine from Shelly Wagner. Ferdale Watkins and the defendant were present in the residence during the sale.
>
> b) On March 21, 2007 the 10th Judicial Drug Task Force agents, Bradley County Sheriff's Department detectives, and Cleveland Police Department officers executed a search warrant at the residence of Shelly Wagner, where the previous buys had been made. Upon entry, agents saw several people in the living room gathered around a coffee table which was covered with several bags of what appeared to be crack cocaine. The subjects scattered throughout the residence taking the crack with them. Ferdale Watkins ran to the NW bedroom, dove between the wall and the bed and attempted to hide crack under the bed. The defendant and Shelly Wagner ran to the children's bedroom and attempted to hide crack in the closet. Officers secured the scene and conducted the search, which yielded 55 grams of crack, 10 grams of marijuana, $443 cash, and drug paraphernalia.
>
> c) Watkins was interviewed and admitted that he had gone with the defendant to Wagner's residence to purchase crack cocaine. The Defendant acted as his driver when he went to the residence to make buys for resale, and Watkins paid the defendant for his services in crack cocaine.
>
> d) If this case had proceeded to trial, the United States would have called an expert witness to testify that the amount of crack cocaine recovered from the residence is a distribution amount.
>
> e) All of the above described events took place in the Eastern District of Tennessee.

(Court File No. 108 ¶ 4). Petitioner also agreed in the plea agreement to "cooperate completely and truthfully" with law enforcement and the staff of the U.S. Attorney's office (*id.* ¶ 6). The Government agreed it would "bring to the Court's attention the nature, extent, and value of the defendant's cooperation so that it may be considered in determining a fair and appropriate sentence under the facts of the case" (*id.* ¶ 8).

3

During the guilty plea hearing, Petitioner affirmed under oath that he was satisfied with his attorney's representation, understood that he was giving up certain rights by entering a guilty plea, and stated he was doing so voluntarily (Court File No. 129 at 2-5, Rearraignment Transcript). Petitioner then confirmed the plea agreement contained all of the understandings that he had with the Government regarding his case (*id.* at 6). The Court inquired as to whether "any officer or agent of the government promised or suggested that [he would] receive a lighter sentence or some other form of leniency if [he] plead[ed] guilty?" (*id.* at 7). Petitioner responded, "Yes, sir" and then changed his response to "Oh no, sir" (*id.*). Next, the Court discussed the elements of the lesser included offense of Count One to which Petitioner was pleading guilty as well as the possible penalties (*id.* at 8-10). The Court also informed Petitioner that it would be determining Petitioner's sentence and that, in addition to the United States Sentencing Guidelines ("USSG" or the "Guidelines") being merely advisory, prior convictions could potentially increase Petitioner's sentence under the Guidelines (*id.* at 10-11). Petitioner indicated he still wanted to enter a guilty plea and that he understood all of the above (*id.* at 7-12). The Court accepted Petitioner's guilty plea (*id.* at 12). That same day, but after the plea hearing had begun, the Government filed a notice of intent to use prior convictions to impeach and enhance Petitioner's sentence pursuant to 21 U.S.C. § 851 (Court File No. 111).

A presentence investigation report ("PSR") was subsequently prepared by the probation office. The probation officer determined Petitioner had a base offense level of 30, which was increased to 34 because he was a career offender. After reducing the offense level by three for acceptance of responsibility, Petitioner had a total offense level of 31. Petitioner also had 16 criminal history points, which equates to a criminal history category of VI. Accordingly, his

4

advisory guidelines range was 188 to 235 months.

Petitioner via counsel filed several objections to the presentence report. In particular, he objected to the § 851 enhancement; the drug quantity amount; the probation officer's failure to grant Petitioner a downward role adjustment for being a minor or minimal participant in the offense; and various other objections pertaining to Petitioner's criminal history score (PSR Addendum at 1-3). Petitioner's attorney also filed a sentencing memorandum noting Petitioner's limited role in the conspiracy as grounds for a below-Guidelines sentence and, alternatively, Petitioner's drug addiction as grounds for a sentence at the bottom of the Guidelines range (Court File No. 116).

At Petitioner's sentencing on November 20, 2008, Petitioner confirmed he had read over and discussed the presentence report with counsel (Court File No. 130 at 2, Sentencing Transcript). Petitioner's counsel explained all previous objections had been resolved, with the exception of his objection to the § 851 enhancement (*id.* at 3). Specifically, he argued the § 851 sentencing enhancement should be inapplicable because the notice was not filed by the Government in a timely manner (*id.* at 4). Without the enhancement, counsel argued Petitioner would have an offense level of 29, a criminal history category of VI, and an advisory guidelines range of 151 to 188 months (*id.* at 5). The Government conceded Petitioner's attorney was correct, and the Court granted Petitioner's objection (*id.* at 5-6). The Court still, however, had Petitioner confirm he had two prior convictions as indicated in the presentence report (*id.* at 6-7).

The Court gave Petitioner's counsel, Petitioner, and the Government an opportunity to speak (Court File No. 130 at 7-11). Petitioner's counsel explained he had filed a sentencing memorandum requesting either a below-Guidelines sentence or a bottom-of-the-Guidelines sentence (*id.* at 7). First, counsel explained Petitioner's limited role in the offense--as a "severe crack addict" who was

5

paid "basically two pieces of crack rocks" to participate in the conspiracy--supported a non-Guidelines sentence (*id.* at 7-8). Counsel also explained that Petitioner's "predominant characteristic or his predominant problem is a severe addiction to crack cocaine that he has yet to be able to kick" (*id.* at 8-9). He stated that even a sentence of 151 months, which would be at the bottom of Petitioner's Guidelines range, would be "far greater than necessary to punish an addict who gave a ride for two crack rocks" (*id.* at 9-10). Finally, Petitioner read a letter to the Court explaining his circumstances and his crack addiction. Among other things, Petitioner noted his life had been unpredictable since he was introduced to crack. He explained "the true reason I stand inside this courtroom is only because of one biggest mistake I made, is to use drugs" and his crack addiction had "caused [him] to lose everything [he had] dreamed of and more" (*id.* at 10). He likened his addiction to "a sickness, just as the flu or epilepsy can come and change one's life so dramatically" (Court File No. 130 at 11). Finally, he asked that the Court "look at this and take this in consideration . . . that I consume and have a chronic urge to use cocaine" (*id.*). He also asked that the Court assist him in getting treatment (*id.*).

After hearing from both parties and considering the 18 U.S.C. § 3553(a) factors, the Court determined a sentence within the Guidelines was appropriate and imposed a term of imprisonment of 156 months (*id.* at 11; Court File No. 119, Judgment). Petitioner did not file a direct appeal of his sentence.

## II.  STANDARD OF REVIEW

Section 2255 of Title 28 of the United States Code permits a prisoner in custody under sentence of a federal court to move the court that imposed the sentence to vacate, correct, or set

6

aside the sentence, on the grounds

> the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack. . . .

28 U.S.C. § 2255. This Court has jurisdiction under 28 U.S.C. § 1331. Petitioner has the burden of establishing any claim asserted in the petition. *See Bowers v. Battles*, 568 F.2d 1, 5 (6th Cir. 1977); *Mayes v. United States*, 93 F. Supp. 2d 882, 886 (E.D. Tenn. 2000). It is a "well-settled principle that to obtain collateral review relief a prisoner must clear a significantly higher hurdle than would exist on direct appeal." *Fair v. United States*, 157 F.3d 427, 430 (6th Cir. 1998) (citing *United States v. Frady*, 456 U.S. 152, 166 (1982)).

Where a constitutional error is alleged in order to obtain relief under § 2255, the record must reflect a constitutional error of such magnitude it had a substantial and injurious effect or influence on the proceedings. *See Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993); *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999). In order to prevail on a § 2255 motion alleging a non-constitutional error, a petitioner must show a "fundamental defect in the proceedings which necessarily results in a complete miscarriage of justice or an egregious error violative of due process." *Gall v. United States*, 21 F.3d 107, 109 (6th Cir. 1994). Thus, "[a] motion brought under § 2255 must allege one of three bases as a threshold standard: (1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid." *Weinberger v. United States*, 268 F.3d 346, 351 (6th Cir. 2001).

### III. DISCUSSION

Petitioner raises three instances of ineffective assistance of counsel in his § 2255 motion. First, he argues counsel was ineffective for failing to file a notice of appeal. Second, he contends counsel was ineffective for not objecting to the Government's breach of the plea agreement. Finally, he claims counsel failed to argue "Petitioner's intoxication and crack addiction is a significant defense against the case presented by the Government" (Court File No. 121 at 4-5). The Court will address each of Petitioner's claims after discussing the applicable law.

The Sixth Amendment provides, in pertinent part, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const. amend. VI. A defendant has a Sixth Amendment right not just to counsel, but to "reasonably effective assistance" of counsel. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In *Strickland*, the Supreme Court set forth a two-pronged test for evaluating claims of ineffective assistance of counsel:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable.

466 U.S. at 687. As with any other claim under § 2255, the burden of proving ineffective assistance of counsel is on the petitioner. *See Weinberger v. United* States, 268 F.3d 346, 352 (6th Cir. 2001); *see also Gov't of Virgin Islands v. Nicholas*, 759 F.2d 1073, 1081 (3d Cir. 1985).

In considering the first prong of the test set forth in *Strickland*, the appropriate measure of attorney performance is "reasonableness under prevailing professional norms." *Strickland*, 466 U.S. at 688. A defendant asserting a claim of ineffective assistance of counsel must "identify the acts or

8

omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id.* at 690. The evaluation of the objective reasonableness of counsel's performance must be made "from counsel's perspective at the time of the alleged error and in light of all the circumstances, and the standard of review is highly deferential." *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986).

When considering the second prong in relation to a guilty plea, the movant must show a reasonably probability that, but for counsel's deficient performance, he would not have pleaded guilty. *Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985); *see Strickland*, 466 U.S. at 694. Thus, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691.

The *Strickland* Court emphasized both prongs must be established in order to meet the claimant's burden, and if either prong is not satisfied the claim must be rejected, stating:

> Although we have discussed the performance component of an ineffectiveness claim prior to the prejudice component, there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one. . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed. Courts should strive to ensure that ineffectiveness claims not become so burdensome to defense counsel that the entire criminal justice system suffers as a result.

*Id.* at 697. The Court will address each of Petitioner's claims in turn.

### A. Failure to File Notice of Appeal

First, Petitioner avers his counsel failed to file a notice of appeal on his behalf. He contends "upon being sentenced [he] confronted counsel about unfulfilled promises pursuant to plea negotiations, and dissatisfaction with the length of the sentence imposed" (Court File No. 121 at 4).

9

He then states "[a] notice of appeal must be filed within ten days of judgement, and no action was taken by counsel of record" (*id.*). He finally opines "[t]here can be no question in this case that petitioner requested counsel to file a notice of appeal, yet counsel failed to do so" (*id.*). The Court observes that, in a different part of his motion, Petitioner states, "I advised counsel that I wanted to challenge my judgement on the day of sentencing" (*id.*).

The Government, on the other hand, claims Petitioner has failed to demonstrate he explicitly instructed counsel to file a notice of appeal on his behalf (Court File No. 137 at 8). First, the Government notes Petitioner never states he actually instructed counsel to file a notice of appeal (*id.* at 9). While Petitioner would like the Court to draw this conclusion (e.g., "[t]here can be no question in this case that petitioner requested counsel to file a notice of appeal"), the Government claims Petitioner fails to offer any facts to support this overarching conclusion. The Government also offers a sworn affidavit from Petitioner's attorney at sentencing, Bryan Hoss, in which Hoss denies that Petitioner ever instructed him to file a direct appeal during the applicable time period and he details the extent of his consultation with Petitioner (*id.*). The Government argues the Court should credit Mr. Hoss's "particularized, sworn affidavit over petitioner's bald assertions" (*id.* at 11).

Specifically, in the affidavit, Mr. Hoss avers "[a]t no point did Mr. Jones ever advise me to file an appeal on his behalf. In fact we had discussed it on two (2) prior occasions and both agreed that should he win his objection that he did not want to file an appeal. He was hoping to obtain a Rule 35 which is why he did not pursue his objections or want to pursue an appeal" (Court File No. 137-1 ¶ 13, Hoss Affidavit). Those two prior meetings were on August 27, 2008 and October 20, 2008 (*id.* ¶¶ 5, 10). Petitioner was sentenced on November 20, 2008. Hoss contends Petitioner never instructed him to file an appeal on his behalf on the day of sentencing (*id.* ¶ 23). Hoss notes that on

10

December 23, 2008, he received a letter from Petitioner making various requests, and among them Petitioner stated "I had ten days to appeal but I haven't heard or seen you since sentencing" (*id.* ¶ 13). Hoss states he immediately wrote a letter in response advising Petitioner that "no appeal was filed as we had previously agreed" (*id.* ¶ 16). On August 20, 2009, Hoss received another letter from Petitioner stating, "I am contacting you regarding my appeal that I instructed you to file on my behalf" (*id.* ¶ 20). Again, Hoss sent Petitioner a letter in response "advising him that no appeal had been filed and the circumstances as to why no appeal had been filed on his behalf" (Court File No. 137-1 ¶ 20).

Hoss contends that, in his eight years of working as a criminal defense attorney, he has never received as many letters from a client as he did from Petitioner over the course of his representation; thus, Petitioner knew how to contact him (*id.* ¶ 15). However, Hoss claims he never received a letter prior to the December 23, 2008 letter mentioning anything about Petitioner wanting to appeal his sentence (*id.*). Finally, Hoss opines that he believes Petitioner has raised this claim because he is angry Hoss did not provide him with certain documents and because a Rule 35 motion was never filed (*id.* ¶ 21).

The Sixth Circuit has held that "failure to perfect a direct appeal, in derogation of a defendant's actual request, is a *per se* violation of the Sixth Amendment." *Ludwig v. United States*, 162 F.3d 456, 459 (6th Cir. 1998). However, as the Sixth Circuit emphasized, "a defendant's actual 'request' is still a critical element in the Sixth Amendment analysis. The Constitution does not require lawyers to advise their clients of the right to appeal." *Id.*; *see also Regalado v. United States*, 334 F.3d 520, 524-26 (6th Cir. 2003) (failure to file an appeal is not ineffective assistance of counsel when counsel was not specifically instructed to do so). Moreover, when the defendant has not

11

expressed whether or not counsel should file an appeal, the court should "evaluate the attorney's performance by asking whether the attorney 'consulted' with the defendant about the benefits and drawbacks of bringing an appeal." *Regalado*, 334 F.3d at 525 (citing *Roe v. Flores-Ortega*, 528 U.S. 470, 478 (2000)).

Here, Petitioner claims he expressed his dissatisfaction with his sentence with Hoss and advised Hoss of his desire to challenge his sentence. He also was aware that a notice of appeal had to have been filed within ten days of sentencing.[2] Petitioner claims no action was ever taken on the part of counsel. The problem with Petitioner's argument, however, is that nowhere does he indicate he specifically instructed Hoss to file a notice of appeal. *See Regaldo*, 334 F.3d at 525 (making a distinction between a petitioner stating she had expressed a desire to file an appeal and her failure to specifically instruct counsel to do so). Petitioner bears the burden of proof of establishing he actually directed counsel to file an appeal.

Hoss states under oath in his affidavit that Petitioner never instructed him to file an appeal within the applicable time period. In fact, Hoss claims the first time Petitioner even alluded to such a request was in his December 23, 2008 letter followed by his August 20, 2009 letter. Both of these letters were sent well after the applicable filing period. Also significant is the fact Hoss claims he consulted with Petitioner about his appeal rights on two occasions prior to sentencing, and they discussed the pros and cons. On both occasions, Petitioner agreed he would not seek an appeal if he prevailed on his objections at sentencing, and counsel understood that Petitioner wanted him to pursue a Rule 35 motion from the Government rather than an appeal. In sum, Hoss expressly states

---

[2] In 2009, after Petitioner's judgment became final, Fed. R. App. P. 4(b)(1)(A) was amended changing the time for filing a notice of appeal from ten days to fourteen days.

12

Petitioner never instructed him to file an appeal at sentencing or any other time prior to his receipt of the December 23, 2008 letter. In light of Petitioner's unsubstantiated allegations and conclusions and the evidence in the record, the Court concludes Petitioner has failed to meet his burden of showing he specifically directed Hoss to file a direct appeal on his behalf.

Accordingly, Petitioner's first ground for relief is **DENIED.**

### B. Failure to Object to Government's Breach of the Plea Agreement

Next, Petitioner argues counsel's performance was ineffective because he failed to object to the Government's breach of the plea agreement. Petitioner claims he complied with all the terms of the plea agreement, including the terms listed in paragraph 6 regarding his cooperation with the Government (Court File No. 121 at 5). He contends, however, the Government "failed to move for reduction at sentenc[ing], and counsel failed to object to this fact at sentencing" (*id.*). He claims counsel had advised him that the Government would reduce his sentence if he complied. Yet, "[t]his was not the case, and petitioner was prejudiced by counsel's omissions (*id.*).

In response, the Government notes Petitioner failed to identify any term of the plea agreement that had been breached (Court File No. 137 at 11). Moreover, even if the plea agreement had in some way indicated the Government would file a motion for downward departure pursuant to USSG § 5K1.1 on Petitioner's behalf, the decision to do so rested solely with the Government (*id.* at 12). Therefore, the Government contends "counsel cannot be faulted for failing to object to a non-existent breach of the plea agreement" (*id.*).

A careful reading of the plea agreement reveals Petitioner's arguments are misguided. The relevant portions of Petitioner's plea agreement read as follows:

> 6. The defendant further agrees to cooperate completely and truthfully with any and all law enforcement agents and the United States Attorney's Office's

13

>            personnel. This cooperation includes, but is not limited to . . . .
>
> . . .
>
> 8.      At the time of sentencing, the United States will bring to the Court's attention the nature, extent, and value of the defendant's cooperation so that it may be considered in determining a fair and appropriate sentence under the facts of the case.
>
> . . .
>
> 11.     No promises have been made by any representative of the United States to the defendant as to what the sentence will be in this case. Any estimates or predictions made to the defendant by defense counsel or any other person regarding the potential sentence in this case are not binding on the Court.
>
> . . .
>
> 14.     This plea agreement constitutes the full and complete understanding between the parties concerning the defendant's guilty plea to the above-referenced charge(s), and there are no other agreements, promises, undertakings, or understandings between the defendant and the United States. . . .

(Court File No. 108). At no point in the agreement did the Government promise it would file a motion for a downward departure pursuant to USSG § 5K1.1. At most, the Government agreed it would inform the Court of the nature of Petitioner's cooperation so that it "may" be taken into account in fashioning Petitioner's sentence. However, the operative word is "may," and given the permissive nature of this term, the Government was not obligated to file such a motion nor was the Court obligated to reduce Petitioner's sentence for his cooperation in the absence of such a motion. The Court also agrees with the Government that defense counsel could not be deemed deficient for not objecting to the Government's failure to file a § 5K1.1 motion because the filing of such a motion is completely within the Government's discretion. Accordingly, because Petitioner has neither shown the Government breached the plea agreement nor that defense counsel was deficient in his failure to object to the Government's non-breach of the plea agreement, Petitioner's second claim must be **DENIED.**

14

### C. Failure to Raise Arguments Regarding Petitioner's Crack Addiction

Finally, Petitioner avers his attorney was ineffective because the attorney failed to raise arguments pertaining to Petitioner's crack addiction. Petitioner contends the record shows he was "clearly a crack addict, and not a distributor" (Court File No. 121 at 5). He argues he lacked the mental state to be guilty of the conspiracy offense charged in Count One of the indictment because he was under the influence of a drug at the time of the commission of the offense (*id.* at 5-6). However, he claims counsel failed to raise these arguments as a defense, or "adequately investigate the effects crack cocaine has on addicts and the behavior and conduct addicts exhibit when using" (*id.* at 6). Petitioner also claims counsel failed to present to the Court any mitigating factors at sentencing. In particular he notes counsel failed to mention Petitioner was merely "in the vicinity of an environment which sustained his everyday activity, which was 'crack use'" and he failed to offer "evidence of Petitioner's cocaine psychosis" (*id.*). Finally, he claims "[t]he most troubling fact of this case is that the most culpable offender in this case (Ferdale Watkins)" received a 120-month term of imprisonment after receiving a USSG § 5K2.0(a)(2)(B) departure (*id.*).

The Government, however, claims Petitioner has failed to demonstrate how counsel was deficient on this grounds. Among other arguments, the Government notes Petitioner readily entered a guilty plea and there was no indication that, had counsel conducted any additional investigation, Petitioner would have decided differently. The Government also claims counsel aptly represented Petitioner throughout the proceedings and raised issues pertaining to Petitioner's addiction when appropriate.

The Court agrees with the Government that Petitioner has failed to show counsel acted deficiently on any of the alleged grounds. First, although Petitioner claims he lacked the mental state

15

to be found guilty of the instant offense and refers to the Bureau of Prisons' psychological and psychiatric evaluation in support of this argument, the Court observes the forensic psychologist actually opined Petitioner's report, available records, and clinical interview "did not support the finding that the defendant lacked the ability to form the necessary intent required by statute for said offenses" (Court File No. 104 at 15). Moreover, Petitioner has not shown how any additional investigation regarding his substance abuse problems or the behavior of addicts would have led to a different result. Based on the terms of the plea agreement and Petitioner's statements at his guilty plea hearing, Petitioner knowingly and voluntarily entered into the plea agreement with the Government. He admitted the facts were true and correct and that he was guilty. Moreover, even if Petitioner could somehow show counsel was deficient for failing to investigate the matter further, Petitioner has not demonstrated that there was a reasonable probability that "but for counsel's [alleged] errors, he would not have pleaded guilty and would have insisted on going to trial." *See Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

Also, with respect to sentencing, Petitioner has not shown counsel's performance was deficient. Petitioner first claims counsel failed to raise any mitigating factors. However, to the contrary, counsel brought Petitioner's drug addiction to the Court's attention in both a sentencing memorandum and at the sentencing hearing where he sought a variance for Petitioner's minor role in the conspiracy and, in the alternative, a bottom-of-the-Guidelines sentence in light of Petitioner's addiction problem. Counsel specifically averred Petitioner's limited role in the offense--as a "severe crack addict" who was paid "basically two pieces of crack rocks" to participate in the conspiracy-- supported a non-Guidelines sentence (Court File No. 130 at 7-8). Moreover, he stated that even a sentence at the bottom of Petitioner's Guidelines range would be "far greater than necessary to

punish an addict who gave a ride for two crack rocks" (*id.* at 9-10).

Petitioner also compares himself to a co-defendant who he claims received a departure pursuant to USSG § 5K2.1(a)(2)(B). However, Petitioner fails to offer any additional details about the grounds upon which his co-defendant received the departure or how his personal characteristics resembled that of his co-defendant's making the same departure warranted. The Court also observes the Guidelines generally discourage counsel from seeking a downward departure due to drug or alcohol dependence or abuse. *See* USSG § 5K2.0(d); *see also* USSG § 5H1.4.

Finally, even if the Court was to determine counsel was deficient for not raising additional arguments with respect to Petitioner's drug addiction, Petitioner is unable to show counsel's performance prejudiced him in any way. As noted earlier, counsel was actually successful at sentencing in objecting to the § 851 enhancement, which resulted in a two-level sentence reduction. Counsel was also able to secure a three-level sentence reduction because Petitioner had "accepted responsibility." Finally, as noted earlier, counsel sought both a non-Guidelines sentence and a sentence at the bottom of the Guidelines range on Petitioner's behalf. And in fact, the Court did impose a sentence of 156 months, which was near the bottom of Petitioner's Guidelines range.

Taken together, Petitioner has failed to show his counsel was ineffective for failing to raise arguments about his drug addiction. Accordingly, this claim is **DENIED.**

### IV.  CONCLUSION

For the foregoing reasons, Petitioner's sentence was not imposed in violation of the Constitution or laws of the United States and is not otherwise subject to collateral attack. Therefore, the motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 will be

17

**DENIED** (Court File No. 121).

In addition to the above, this Court **CERTIFIES** any appeal from this action would not be taken in good faith and would be totally frivolous. Therefore, any application by Petitioner for leave to proceed *in forma pauperis* on appeal is **DENIED**. Fed. R. App. P. 24. Petitioner has failed to make a substantial showing of the denial of a constitutional right, *see* 28 U.S.C. § 2253; Fed. R. App. P. 22(b), or reasonable jurists would disagree on the resolution of this matter, thus a certificate of appealability **SHALL NOT ISSUE**. *Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000).

**An Order shall enter.**

/s/
**CURTIS L. COLLIER**
**UNITED STATES DISTRICT JUDGE**